IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SCOTT BOATNER PIERCE,** ) | |
| Plaintiff, ) | |
| vs. ) | No.  3:16-CV-2554-G-BH |
| ) | |
| **KAUFMAN COUNTY DISTRICT** ) | |
| **ATTORNEY'S OFFICE et al.,** ) | |
| Defendants. ) | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening. Based on the relevant filings and applicable law, the case should be **DISMISSED** with prejudice.

### I.  BACKGROUND

Scott Boatner Pierce (Plaintiff), an inmate confined in the Texas Department of Criminal Justice's Neal Unit, sues the Kaufman County District Attorney's Office (DA's Office), Kaufman District Attorney Shelton Gibbs (DA), Kaufman County (County), the Adult Probation Office of Kaufman County (Probation), the Sheriff's Department of Kaufman County (Sheriff's Department), and Sheriff David Byrnes (Sheriff) (Defendants) under 42 U.S.C. § 1983 for false arrest and false imprisonment. (doc. 1 at 1, 4, 6;[1] doc. 15 at 1-5.[2])

On May 2, 2016, Plaintiff was charged in Henderson County with assault causing bodily injury to a family member (a Class C misdemeanor). (doc. 1 at 4; *see also* https://txhendersonodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Plaintiff's answers to the Magistrate Judge's questionnaire are construed as an amendment to his complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

records.³)  A misdemeanor warrant was issued on May 3, 2016, in Case No. M21601209. (*Id.*)

On May 4, 2016, Plaintiff pled guilty in Cause No. 15-60045-86-F in a Kaufman County district court to an aggravated assault with a deadly weapon (a second degree felony) that had occurred on May 14, 2015. (*See* https://txkaufmanodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal record.)  He was sentenced to four years imprisonment but was placed on deferred adjudication. (*Id.*)  On the same day, Plaintiff also pled guilty to assault causing bodily injury to a family member (a class A misdemeanor) in Case No. 15-60110-CC-M in a Kaufman County Court of Law.  (*Id.*)  He was sentenced to 18 months and placed on deferred adjudication for that conviction as well. (*Id.*)

On May 25, 2016, the DA's Office filed a motion to revoke Plaintiff's community supervision in Case No. 15-60045-86-F on grounds that he violated a condition of release when he "committed the offense of Assault Causes Bodily Injury Family Member and was arrested by [the] Henderson County Sheriff's Department on May 21, 2016." (doc. 1 at 4; doc. 13 at 1-2.)  As a result, an arrest warrant was issued in Case No. 15-60045-86-F, and the Sheriff's Department executed the warrant and arrested Plaintiff on May 27, 2016. (doc. 1 at 4.)  On May 27, 2016, the DA's office also filed a motion to revoke community supervision in Cause No. 15-60110-CC-M. (*See* https://txkaufmanodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal record.)  An arrest warrant was issued in that case and was served on June 1, 2016. (*Id.*)

---

³ Because they are matters of public record, judicial notice of Plaintiff's criminal state records may be taken. *See Hagwood v. Doe*, 3:16-CV-3038-G (BN), 2018 WL 1833053, at *1 (N.D. Tex. Mar. 27, 2018), *report and recommendation adopted sub nom.*, 2018 WL 1813152 (N.D. Tex. Apr. 17, 2018) (taking judicial notice of the plaintiff's state criminal record as part of the court's screening under 28 U.S.C. §§ 1915(e)(2) & 1915A)); *see also Land v. Stone*, No 3:10-cv-981-B-BK, 2010 WL 5538413, at *4 (N.D. Tex. Dec. 14, 2010) (noting the propriety of taking judicial notice of adjudicative facts apparent from "state court criminal records") (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998)).

On July 7, 2016, the DA moved to withdraw both motions to revoke. (doc. 1 at 4; doc. 13 at 3; https://txkaufmanodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal record.) The motion in Case No. 15-60045-86-F stated that "[a] motion to revoke was filed on the basis of a new arrest," and it requested that the motion be deemed withdrawn and that Plaintiff be continued on community supervision;" it was granted that same day. (doc. 1 at 4; doc. 13 at 3-4.) The motion to withdraw in No. 15-60110-CC-M was not granted until July 13, 2016, however. (https://txkaufmanodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal record.) On July 14, 2016, the Sheriff's Department released Plaintiff from custody. (doc. 1 at 4; doc. 15 at 4.)

On September 7, 2016, Plaintiff was indicted in Henderson County in Case No. CR16-0700-3) for continuous violence against a family member on July 15, 2016. *See* https://txhendersonodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal records.) He pled guilty to assault of a family member two or more times within 12 months (a third degree felony), and on September 22, 2016, he was sentenced to five years imprisonment in the Texas Department of Criminal Justice (TDCJ). (*Id.*) His deferred adjudication in Case No. 15-60045-86-F was subsequently revoked, and on November 17, 2016, he was adjudicated guilty. (*See* https://txkaufmanodyprod.tylerhost.net/PublicAccess/default.aspx, search Plaintiff's criminal record.) On November 30, 2016, a motion to revoke his community supervision in Case No. 15-60110-CC-M was granted, he was sentenced to confinement for 127 days, and he began his sentence on November 30, 2016. (*Id.*)

Plaintiff claims that Probation violated his constitutional rights because it was aware of the outstanding misdemeanor warrant from Henderson County because it was "plainly listed on the first

3

page" of its "probation agreement" with him in Case No. 15-60045-86-F, but it failed to review its probation agreement. (doc. 15 at 2, 10.) Probation's unconstitutional conduct caused the DA and the DA's Office to file the motions to revoke, resulting in his false arrest and imprisonment. (*Id.*) He also claims that the DA and the DA's Office violated his civil rights because they never obtained a copy of his arrest report before filing the motion to revoke and obtaining an arrest warrant, and that the DA is responsible for overseeing Probation. (doc. 15 at 3, 6, 10.) He also contends that the Sheriff and the Sheriff's Department violated his constitutional rights because they executed the arrest warrant and falsely arrested and falsely imprisoned him, and because the Sheriff released him seven days after the motion to revoke had been withdrawn by order of court. (doc. 15 at 3-4, 11.) He also claims that his false arrest and imprisonment was the result of the County's official policy or custom "[t]o honor and serve the arrest warrant issued by the DA for [the motion to revoke]." (doc. 15 at 3.) Plaintiff seeks monetary damages in the amount of $90,500.00, as well as unspecified injunctive relief. (doc. 15 at 9.) No process has been issued.

## II. PRELIMINARY SCREENING

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

4

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.  SECTION 1983

Plaintiff seeks monetary damages and injunctive relief under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.   DA's Office and Sheriff's Department**

Plaintiff initially named the DA's Office and the Sheriff's Department as defendants in this lawsuit. To the extent that he is still asserts claims against these defendants, he fails to state a claim.

A plaintiff may not bring a civil rights action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural

authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. The DA's Office and the Sheriff's Department are not jural entities subject to suit. *See, e.g., Delta Fuel Co., Inc. v. Maxwell*, 485 F. App'x 685, 686–87 (5th Cir. Aug.10, 2012) (affirming the dismissal of § 1983 claim against a district attorney's office as a non-jural entity); *Gage v. Valdez,* No. 3:16-CV-1360-B, 2017 WL 4465765, *2 (N.D. Tex. Aug. 21, 2017) (finding that Dallas County Sheriff's Department is a non-jural entity), *adopted by* 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017). Because the DA's Office and the Sheriff's Department are non-jural entities, Plaintiff's claims against them should be dismissed.

**B.     DA**

Plaintiff sues the DA in his official capacity. (doc. 15 at 1, 5.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). When acting in their official prosecutorial capacities, Texas district attorneys and assistant district attorneys are considered agents of the State, which is immune from claims for damages under the Eleventh Amendment. *Neinast v. Texas*, 217 F.3d 275, 280 (5th Cir. 2000); *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir.1997); *Quinn v. Roach*, 326 F. App'x 280, 292-293 (5th Cir. May 4, 2009). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[4] "The Eleventh Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies.

---

[4] Although courts and litigants often use "Eleventh Amendment immunity" as a "convenient shorthand", the phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *N. Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

This immunity applies unless it is waived by consent of a state or abrogated by Congress." *See Curry v. Ellis Cnty., Tex.*, No. 3:08-CV-1675-L, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communic'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit nor has Congress abrogated the immunity by enacting 42 U.S.C. § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Any official capacity claims Plaintiff is asserting against the DA are all based on actions taken in his official capacity as an agent of the State, so his § 1983 official capacity claims against the DA should be dismissed because the State is immune from suit.

### C. <u>Probation</u>

Plaintiff also initially named Probation as a defendant in this lawsuit. To the extent that he is still asserts claims against this defendant, his claims are barred by immunity.

A county adult probation office "is an arm of the state within the meaning of the Eleventh Amendment, and [] the federal courts lack subject matter jurisdiction over [ ] section 1983 claims against it." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 745 (5th Cir.1986); *see also Wilson v. Burchett*, No. 3:14-CV-3459-K, 2014 WL 7028256, at *4 (N.D.Tex. Dec. 12, 2014) (quoting *Clark* and *Flores v. Ramirez*, No. L–94–30, 1996 WL 162054, at *2 (S.D.Tex. Feb. 26, 1996) ("The Fifth Circuit has decided, in an exhaustive opinion directly on point, that county adult probation departments [] are arms of the state for 11th Amendment purposes.")); *Yowman v. Jefferson Cnty. Cmty. Supervision & Corr. Dept.*, 370 F. Supp. 2d 568, 586-88 (E.D. Tex. 2005) (same). Plaintiff's

7

claims against Probation should also be dismissed because the State is immune from suit.

**D.      Sheriff**

Plaintiff sues the Sheriff in his official capacity. (doc. 15 at 4.)

Like his claims against the DA, Plaintiff's allegations against the Sheriff in his official capacity are essentially claims against his government employer, the County. *See Graham*, 473 U.S. at 165. Section 1983 does not allow a municipality to be held vicariously liable for its officers' actions on a theory of *respondeat superior*,[5] however. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978).[6] A plaintiff who seeks to impose liability on local governments under § 1983 must prove that his injury was caused by action pursuant to official municipal policy. *Monell*, 436 U.S. at 691-95; *McClure v. Biesenbach*, 355 F. App'x 800, 803-04 (5th Cir. 2009).

Plaintiff contends that the Sheriff violated his rights by keeping him imprisoned an additional seven days after the motion to withdraw was granted and his community supervision was reinstated. (doc. 15 at 4.) The County cannot be held vicariously liable for Sheriff's actions. Moreover, as discussed below, Plaintiff has failed to sufficiently allege a claim of municipal liability against the County. His official capacity claims against Sheriff should be dismissed for failure to state a claim.

**E.      County**

Plaintiff has asserted § 1983 claims against the County. (doc. 1 at 1; doc. 15 at 2-3.)

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co.*

---

[5] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." RESPONDEAT SUPERIOR, *Black's Law Dictionary* (10th ed. 2014).

[6] Municipal liability analysis also applies to Texas counties. *See Prince v. Curry*, No. 10-10294, 2011 WL 1659493, at * 3 n. 3 (5th Cir. Apr. 28, 2011); *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998).

*Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008). Plaintiffs must show an "underlying claim of a violation of rights," as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (citing *Monell*, 436 U.S. at 694). The official policy requirement means that "municipal liability under § 1983 is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986).

### 1.   *Official Policy or Custom*

To establish municipal liability under § 1983, a plaintiff must sufficiently identify an official policy or custom that was the impetus for the violation of his constitutional rights. *See Cox*, 430 F.3d at 748. "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 & n.22 (5th Cir. 2001); *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent

test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to adequately plead a claim of municipal liability. *Spiller*, 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory under *Monell*. *Id*.

Here, Plaintiff alleges that the County had an official policy or custom that requires the Sheriff "to honor and serve the arrest warrant issued by the DA for [a] Motion to Revoke." (doc. 15 at 3.) He does not identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the County's lawmaking officers, or by an official to whom the lawmakers have delegated policy-making authority, however. (*See id*.) He maintains that Probation's failure to read "paper work" and its "acting upon assumption not fact" was a direct violation of his constitutional rights. (*Id.*) His complaint describes his beliefs, makes sweeping conclusory statements, and only generally alleges that these actions constituted constitutional violations. (*See id*.) Like *Spiller*, mere assertions that individuals were "acting in compliance with

10

the municipality's customs, practices or procedures" is insufficient to plead municipal liability. *See Spiller*, 130 F.3d at 167.

Moreover, a single incident is insufficient to infer an official policy or custom; plaintiffs "must show a 'persistent and widespread practice.'" *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11–CV–3099–B–BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."). Plaintiff does not allege any facts showing a pattern of similar incidents involving arrest warrants being issued based on a baseless motion to revoke.

Because Plaintiff only provides vague generalities and conclusions, and essentially relies on a single incident, he has not sufficiently alleged an official policy or custom, a necessary element to municipal liability. *See Cox*, 430 F.3d at 748.

### 2. *Policymaker*

The Fifth Circuit clarified in *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), that to state a claim upon which relief can be granted, "a plaintiff is *not* required to single out the specific policymaker in his complaint." *Id.* at 282 (emphasis added). To sufficiently state a claim upon which relief can be granted to survive a motion to dismiss,

> [a plaintiff need] only to plead facts—facts which establish that [a] challenged policy was *promulgated or ratified by the city's policymaker*. [The plaintiff's] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

11

*Id.* at 285 (emphasis added).[7] The case involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech" in Dealey Plaza. *Id.* at 286. Because the plaintiff alleged that the city's official spokesman publically announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded promulgation or ratification by a policymaker even though he had not specifically identified one. *See id.* at 286; *see also Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 2017 WL 2189414, at *7 (N.D. Tex. May 18, 2017) (discussing the pleading requirement of a policymaker in light *Groden*).

Here, Plaintiff identifies the policymaker as "[t]he laws of [the] State of Texas," and alleges that the Sheriff "has to honor any warrant issued by the Probation [Department] which is [a] direct branch of the DA's Office and take into custody the said prisoner." (doc. 15 at 3.) Unlike the plaintiff in *Groden*, he fails to plead any facts concerning any actions by any alleged policymaker to ratify or promulgate any policy. *See* 826 F.3d at 286. He instead relies only on the conduct of the Sheriff and the DA to establish municipal liability against the County. (doc. 15 at 3.) As noted, however, municipal liability cannot be established in that manner. *See Groden*, 826 F.3d at 283 ("Municipalities are not liable for the unconstitutional actions of their employees under *respondeat superior*.") (citing *Monell*, 436 U.S. at 694). Even accepting Plaintiff's well-pleaded facts as true and viewing them in the light most favorable to him, he fails to identify any policymaker or point

---

[7] The identity of the policymaker official is a question of state law and not of fact. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts may need to consult 'local ordinances and regulations.'" *Groden*, 826 F.3d at 284 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

to any actions by the County to ratify or promulgate any policy. (*See* doc. 15 at 1-11.) Plaintiff's mere conclusory statements are devoid of any facts that establish any involvement by the County or its policymakers.

Because Plaintiff has alleged no facts that any policymaker promulgated or ratified an unconstitutional policy, or from which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to "raise [his] right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. He therefore fails to nudge his § 1983 claim against the County across the line from conceivable to plausible. *Id.*[8]

**F.     Injunctive Relief**

Plaintiff generally claims he is entitled to injunctive relief, but does not specify what conduct he seeks to enjoin or action he seeks to enforce. (doc. 15 at 8.)

"An injunction is a remedy granted by a court of equity or a court of general jurisdiction, including equity, that orders the party who receives it to perform some act or to refrain from performing some act." INJUNCTION (INJUNCTIVE RELIEF), *The Wolters Kluwer Bouvier Law Dictionary Desk Edition* (2012). Injunctive relief is "potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004). Although the complaint includes a claim for injunctive relief, it only seeks monetary damages for the alleged constitutional violations by Defendants. (doc. 15 at 8.) Nevertheless, because "an injunction is a remedy that must be supported

---

[8] Because Plaintiff has failed to allege the first two elements of municipal liability, it is unnecessary to reach the third element. *See Williams v. City of Irving, Texas*, No. 3:15-CV-1701-L-BH, 2017 WL 3822115, at *6 (N.D. Tex. July 14, 2017), *rec. adopted sub nom.*, 2017 WL 3726980 (N.D. Tex. Aug. 30, 2017).

13

by an underlying cause of action," the failure of Plaintiff's constitutional claims also warrants dismissal of his claim for injunctive relief. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (citing *Klay*, 376 F.3d at 1097) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action.... There is no such thing as a suit for a traditional injunction in the abstract.").

## IV.  RECOMMENDATION

The plaintiff's complaint should be **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1) and 1915(e)(2)(B)(i) because it fails to state a claim and seeks monetary relief against defendant who are immune.  Such dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).

**SIGNED this 27th day of September, 2018.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE